CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 20 2017

JULIA C. DUDLEY, CLERK
BY: /s/ mm
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSEPH GREGORY CASH, | ) |
| | ) Civil Action No. 7:16-CV-00192 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| MAGIC CITY MOTOR CORPORATION, | ) Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |
| | ) |

Plaintiff Joseph Gregory Cash ("Cash") brings this action against his former employer, Magic City Motor Corporation ("Magic City"), alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. The case is currently before the court on Magic City's motion to dismiss plaintiff's amended complaint. For the reasons stated, the court will grant in part and deny in part the defendant's motion to dismiss.

## Background

The following facts, taken from the plaintiff's amended complaint, are accepted as true for purposes of the defendant's motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

From September of 2010 through August of 2013, Cash worked at Magic City's Roanoke location as a Service Director. Am. Comp. ¶ 8. He left for another employment opportunity, but came back on April 19, 2015 to work as a Service Advisor at Magic City's Lexington location. Id. ¶ 8-9. Throughout the duration of his employment, Cash was a model employee and received positive feedback. Id. ¶ 10.

On May 17, 2015, a day when Cash was not working, he felt ill. Id. ¶ 11. He contacted his supervisor and requested the next day off, a request which was granted. Id. ¶ 13-14. Cash's

physician excused him from work from May 18, 2015 until June 8, 2015. Id. ¶ 15. Cash was diagnosed with a bleeding ulcer, which required endoscopic surgery and various tests. At all relevant times, Cash and his wife were in communication with a supervisor at Magic City, Jay Zane ("Zane"), regarding Cash's condition. Cash also informed Zane and others that he suffered from anemia and that the bleeding ulcer prevented Cash from effectively treating his anemia. Id. ¶ 16-19.

On or around June 9, 2015, Cash returned to work with a note from his physician, asking Magic City to allow Cash to work full-time in Roanoke or, in the alternative, half days from Cash's regular Lexington location. Id. ¶ 20. In response, Zane confronted Cash and told him that his position in Lexington would be filled by someone else. Id. ¶ 23. Zane also stated that Cash's salary would decrease from $1,250.00 per week to $800.00 per week. Id. ¶ 24-26. Cash requested the opportunity to return to the Lexington location at his original salary once his condition improved, which Zane denied. Id. ¶ 24, 26. At some point, Zane also accused Cash of being unable to work for a period of time in April of 2012 when Cash had his hip replaced. Id. ¶ 25. Cash stopped working on or around June 19, 2015, as he could not make ends meet with the reduced salary. Id. ¶ 28-29.

On April 21, 2016, Cash filed a four-count complaint alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. On July 1, 2016, the court held a hearing on defendant's motion to dismiss. The court granted plaintiff's oral motion for leave to amend and took under advisement defendant's motion to dismiss. On July 30, 2016, plaintiff filed a five-count amended complaint, alleging: (1) discrimination; (2) discriminatory discharge; (3) failure to accommodate; (4) retaliation; and (5) discrimination for being "regarded as" having a disability. The matter has been fully briefed and is ripe for review.

2

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). The Federal Rules of Civil Procedure "require [] only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Accordingly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 570). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 678 (citing Fed. R. Civ. Pro. 8(a)(2)).

## Discussion

The ADA, as amended by the ADA Amendments Act of 2008 (the "ADAAA"), prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring,

3

advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A qualified individual is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual; . . . a record of such impairment; . . . or being regarded as having such an impairment." 42 U.S.C. § 12102. "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A). Whether a plaintiff is disabled is a question of law for the court. See Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) ("Whether [the plaintiff] meets the definition of the statute, and therefore can bring a claim under the statute, is a question of law for a court, not a question of fact for a jury."). Pursuant to the ADAAA and its regulations, the definition of disability "shall be construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A).

## I. Discrimination in Violation of the ADA

To establish a prima facie case of disability discrimination, a plaintiff must show that (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was not otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action which "occurred under circumstances that raise a reasonable inference of unlawful discrimination." See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995). "An adverse employment action is a discriminatory act which

4

'adversely affect[s] the 'terms, conditions, or benefits' of [a plaintiff's] employment.'" James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (quoting Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001)). In the instant matter, the defendant does not assert that it was not a covered employer or that Cash was otherwise not qualified to perform the essential functions of his job. Instead, the defendant argues that Cash has failed to plead that he was disabled or regarded as disabled at the time of the allegedly adverse employment actions, and that Cash has not pled facts supporting his claims for discrimination, discriminatory discharge, failure to accommodate, or retaliation. Conversely, Cash argues that he has pled that he had an impairment, of which his employer was aware, sufficient to demonstrate that he was either disabled or regarded as disabled, and that he has alleged facts sustaining his claims.

### A. Disabled Pursuant to the ADA

For the reasons set forth, the court concludes that Cash has sufficiently pled that he was "regarded as" disabled under the ADA. Cash, however, has failed to plead that he was actually disabled. To plead a disability, a plaintiff must assert that he has a physical impairment, he must identify a major life activity, and he must plead that the physical impairment substantially limits that life activity. See Kothe v. Continental Teves, Inc., 461 F. Supp. 2d 466, 471 (W.D. Va. 2006). A "physical impairment" means any "disorder or condition . . . affecting one or more body systems." 29 C.F.R. § 1630.2(h)(1). A substantially limiting impairment is one that "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j). "Major life activities are defined broadly as including 'caring for oneself, performing manual tasks, seeing, hearing, eating sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" Signore v. Bank of America, N.A., No.

5

2:12CV539, 2013 WL 5561612, at *7 (E.D. Va. Oct. 8, 2013) (quoting 42 U.S.C. § 12102(2)(A)).

Here, the court concludes that Cash has failed to plead facts giving rise to an actual disability. Cash has alleged that he had impairments consisting of a bleeding ulcer requiring endoscopic surgery and various tests, and anemia. He has not identified a major life activity or alleged that these impairments substantially limited a major life activity. While Cash does plead that anemia "may make you feel tired and weak," he has not pled that his anemia made him feel tired or weak. See 29 C.F.R. § 1630.2(g)(1) ("Disability means, with respect to an individual . . . .") (emphasis added). Moreover, the court cannot find that Cash's bald assertion that his "condition substantially limited [his] major life activities of working and his ability to care for himself" is more than a mere recitation of the elements. Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

While the regulations make clear that whether an impairment is substantially limiting does not require an "extensive analysis" and is not a "demanding standard," a plaintiff must still plead that the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j). A substantial limitation on the ability to work "'requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs,' not simply a particular job." Schapiro v. New York City Dep't of Health, 25 F. App'x 57, 61 (2d Cir. 2001) (rejecting plaintiff's claims of discrimination when plaintiff had only demonstrated a limitation in the ability to work a specific job at a specific location) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999)). Here, plaintiff was apparently able to return to work, full-time, in Roanoke. Am. Compl. ¶ 24-26. He has alleged no aspect of his work that he was unable to do or was otherwise limited in

performing.

Similarly, other than simply stating that he was substantially limited "in his ability to care for himself," Cash provides no facts supporting this contention or describing what aspect of caring for himself he could not perform without substantial limitation. "To be substantially limited in the major life activity of caring for himself, [plaintiff] must have an impairment that 'prevents or severely restricts' his ability to care for himself compared with how unimpaired individuals normally care for themselves in daily life." Didier v. Schwan Food Co., 465 F.3d 838, 842 (8th Cir. 2006) (quoting Fenney v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 715 (8th Cir. 2003)). In his amended complaint, Cash does not claim that his anemia or bleeding ulcer created a substantial limitation to care for himself "as compared to most people in the general population." 29 C.F.R. § 1630.2(j).

Plaintiff cites two cases in support of his argument: Croy v. Blue Ridge Bread, Inc., No. 3:12-CV-00034, 2013 WL 3776802 (W.D. Va. July 15, 2013) and Vande Zande v. State of Wisconsin Department of Administration, 44 F.3d 538 (7th Cir. 1995). The court believes these cases to be readily distinguishable. In Croy, the plaintiff was diagnosed with HIV, and the defendant did not challenge the contention that the plaintiff was disabled. Moreover, the Supreme Court has previously pronounced that HIV is a physical impairment within the meaning of the ADA. Bragdon v. Abbott, 524 U.S. 624, 631 (1998) ("We hold respondent's HIV infection was a disability under [the ADA]."). Similarly, in Vande Zande, a paralyzed plaintiff suffered from pressure ulcers, which required that she stay home for weeks at a time to treat them. 44 F.3d at 543. The Seventh Circuit determined that the pressure ulcers, despite being intermittent, were "a characteristic manifestation of an admitted disability . . . a part of the underlying disability and hence a condition that the employer must [have] reasonably

7

accommodate[d]." Id. at 544. Here, Cash makes no claim of an underlying disability, let alone an "admitted disability." Id. To the extent anemia can be construed as such an "underlying disability," the amended complaint does not suggest that Cash's anemia substantially limited a major life function or that the bleeding ulcer was a "characteristic manifestation" of that anemia. Id. In sum, plaintiff has not put forth factual allegations indicating that his physical impairment substantially limited a major life function. Iqbal, 556 U.S. at 678. Accordingly, plaintiff does not state a claim for discrimination based on an actual disability.

Nonetheless, plaintiff also alleges that he was "regarded as" disabled by Magic City. The statutory definition of "disability" contemplates that an individual qualifies when he is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Enactment of the ADAAA broadened coverage under the "regarded as" prong of the definition of disabled. Accordingly, pursuant to the ADAAA, an individual is no longer required to demonstrate that the disability he is regarded as having substantially limits a major life activity, or that his or her employer mistakenly believed that the impairment substantially limits a life function. Instead, the statute provides:

> An individual meets the requirements of "being regarded as having such an impairment" if the individual establishes that he or she [1] has been subjected to an action prohibited under this chapter [2] because of an actual or perceived physical or mental impairment <u>whether or not the impairment limits or is perceived to limit a major life activity</u>.

42 U.S.C. § 12102(3)(A) (emphasis added). Therefore, the "regarded as" analysis "focuses not on [the plaintiff] and his actual abilities, but rather on the reactions and perceptions of the persons interacting or working with him." Kelly v. Drexel Univ., 94 F.3d 102, 108-09 (3d Cir. 1996). Importantly, the ADAAA requires only that a plaintiff plead and prove that the defendants regarded him as having a physical or mental impairment, "no matter the defendants' view of the magnitude of the effect of the perceived impairment on [his] life activities." Mercado v. Puerto

8

Rico, 814 F.3d 581, 588 (1st Cir. 2016). Some courts have held, post-ADAAA, that "all that an ADA plaintiff must show . . . for the 'regarded as' prong is that a supervisor knew of the purported disability." Rubano v. Farrell Area School Dist., 991 F. Supp. 2d 678, 693 (W.D. Pa. 2014) (citing sources).

While the court questions whether the Fourth Circuit would find that simply notice of an impairment would suffice to plead that one was "regarded as" disabled, the court need not address that issue here. Plaintiff has alleged other facts in support of his claim that Magic City regarded him as disabled.

First, the court believes that plaintiff has sufficiently pled that he suffered from a physical impairment. The ADA, as amended by the ADAAA, does not define physical impairment. The Equal Employment Opportunity Commission ("EEOC") has issued regulations implementing the statute, which define the term to mean "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory, . . . digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 630.2(h)(1). Magic City does not address whether plaintiff's bleeding ulcer, anemia, or both are physical impairments, and Cash alleges that the bleeding ulcer required surgery and left him unable to alleviate his anemia. Am. Compl. ¶ 16, 19.

Second, plaintiff has pled more than mere knowledge of the purported disability on the part of his employer. Cash alleges that he "continuously communicated" with Zane regarding the status of his condition and leave. Id. ¶ 18. When Cash requested to work from Roanoke full-time or Lexington half-time, Zane expressed anger and referenced a prior surgery that left Cash unable to work. Id. ¶ 21, 25. Taking into consideration the liberal requirements of notice

9

pleading as established by Rule 8 of the Federal Rules of Civil Procedure, including the requirement that all reasonable inferences must be resolved in favor of the pleader, the court believes that plaintiff has pled, albeit just barely, facts suggesting that Magic City perceived Cash to have an impairment. See Iqbal, 556 U.S. at 678.

The defendant correctly notes that the "regarded as" theory of disability is not available when the employer, mistakenly or not, believes that an employee has a merely "transitory and minor" impairment. Id. § 12102(3)(B); see also Sharp v. Profitt, --- F. App'x ---, 2016 WL 7468086, at *8 (6th Cir. Dec. 28, 2016). A transitory condition is defined as one lasting six months or less. 42 U.S.C. § 12102(3)(B). The EEOC regulations contemplate that a defendant bears the burden of demonstrating that a plaintiff's impairment is objectively transitory and minor as it is an affirmative defense. See id.; Budhun v. Reading Hosp. and Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014) ("The ADA regulations list being 'transitory and minor' as a defense to an ADA claim."). The court recognizes that "while ordinarily a party may not raise affirmative defenses at the motion to dismiss stage, it may do so if the defense is apparent on the face of the complaint." Id.; Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). In the instant case, the plaintiff has alleged that the condition is "chronic," and the facts pled do not provide any indication as to whether the parties expected Cash to need a long recovery. Am. Compl. ¶ 16. At this point in the litigation, the court does not believe it appropriate to consider the merits of Magic City's affirmative defenses. See Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993) ("A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses.").

Therefore, Cash has sufficiently alleged that his employer was aware of his impairment. To sustain his claim for being "regarded as" disabled, Cash must also plead facts indicating that

he was "subjected to an action prohibited under this chapter because of [this] . . . perceived . . . impairment." 42 U.S.C. § 12102(3)(A); see also Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 703 (4th Cir. 2001) (noting that "the fact that an employer is aware of an employee's impairment, without more, is insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action") (citations omitted). As discussed below, the court believes Cash's complaint to be adequate.

### B. Adverse Employment Actions

"An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (citing Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). "[C]ourts use Title VII standards to determine whether a plaintiff suffered an adverse action under the [ADA]." Blackwell v. SecTek, Inc., 61 F. Supp. 3d 149, 161 (D.D.C. 2014). "Typical" examples of adverse actions are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion . . . ." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999). A "reassignment can only form the basis of a valid [] claim if the plaintiff can show that the reassignment had some significant detrimental effect." James, 368 F.3d at 376 (quoting Boone, 178 F.3d at 256 (4th Cir. 1999)). There is little question, however, that a reduction in salary or a reassignment with a reduction in salary can constitute an adverse employment action. Sparenberg v. Eagle Alliance, No. JMF-14-1667, 2015 WL 6122809, at *8 (D. Md. Oct. 15, 2015) (finding that plaintiff presented a retaliation claim in regard to "his transfer and reduction in pay"); Davidson-Nadwodny v. Wal-Mart Assocs., Inc. No. CCB-07-2595, 2010 WL 1328572, at *8 (D. Md. Mar. 26, 2010) ("Wal-

11

Mart's decision to transfer [plaintiff] to a lower-paying position after she [engaged in a protected activity] and its failure to compensate her for the difference in pay are sufficient to constitute adverse actions on their own."); Brand v. N.C. Dep't of Crime Control and Public Safety, 352 F. Supp. 2d 606, 614 (E.D. Va. 2004) (finding that plaintiff had sufficiently alleged an adverse employment action when plaintiff's employer decided to reduce plaintiff's pay despite the reduction being effectuated much later).

Here, after hearing of Cash's request to work from Roanoke or half days in Lexington until his condition improved, Magic City informed Cash that his position in Lexington would be filled. Am. Compl. ¶ 23. Magic City then reassigned Cash to Roanoke and told him that his salary would be reduced by thirty-six percent. Id. ¶ 24. When Cash asked if he could return to Lexington upon regaining his health, Magic City reported to Cash that his transfer to Roanoke and the accompanying reduction in salary were permanent. Id. ¶ 27. From these factual allegations, the court believes that Cash has sufficiently pled that he was subject to an adverse employment action.

Cash, however, must further plead a causal relationship between the protected activity and the adverse employment action. He may do so by demonstrating that the adverse employment action "occurred under circumstances that raise a reasonable inference of unlawful discrimination." See Ennis, 53 F.3d at 58. In the context of retaliation cases, as discussed below, the Fourth Circuit has held that proximity in time can be sufficient to establish the necessary causal connection between an employee's protected activity and the adverse employment action. See Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004) ("We assume, without deciding, that . . . the employer's knowledge [of a protected activity] coupled with an adverse action taken at the first opportunity satisfies the casual connection element of the prima facie case."); Williams v.

Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989) (holding that termination shortly after protected activity satisfied causal connection element at prima facie stage). Here, on May 17, 2015, Cash told his employer that he felt ill. Am. Compl. ¶ 12-13. He was released from work between May 15, 2015 and June 8, 2015. Id. ¶ 15. On June 9, 2015, Cash presented his doctor's note requesting that he work from Roanoke or half days from Lexington. Id. ¶ 20. That day, he was told that his Lexington position would be filled. Id. ¶ 23. Two days later, on June 11, 2015, Zane informed Cash that the reduction in salary would be permanent. Id. ¶ 26. Within a week, Zane reported that the transfer to Roanoke would also be permanent. Id. ¶ 27. With less than a month between disclosure of Cash's illness and the permanent transfer and reduction in salary, the court is satisfied that Cash has pled sufficient facts to suggest a causal connection needed to make out a prima facie case. Accordingly, the court will deny defendant's motion to dismiss Count I.

## II.  Discriminatory Discharge

Cash also alleges that he was discharged because of his disability, asserting that he had to quit working for Magic City because he "could not make ends meet." Am. Compl. ¶ 28. When claiming constructive discharge, a plaintiff must plead (1) that the defendant created intolerable working conditions; and (2) that the defendants did so deliberately in an effort to force plaintiff to leave his employment. Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1132 (4th Cir. 1995). Constructive discharge arises from the employer's "calculated effort to pressure [the employee] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." Bristow v. The Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985). "Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best

decision.... Rather, intolerability... is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign—that is, whether he would have had no choice but to resign." Blistein v. St. John's College, 74 F.3d 1459, 1468 (4th Cir. 1996) (citations omitted), overruled on other grounds, Oubre v. Entergy Operations, Inc., 522 U.S. 422 (1998). "Deliberateness exists only if the actions complained of 'were intended by the employer as an effort to force the employee to quit.'" E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 944 (4th Cir. 1992) (quoting Bristow, 770 F.2d at 1255). "Thus, each claimant must [plead facts showing] that [the employer's] actions were specifically intended to force each claimant to quit." Id. (emphasis in original).

Deliberateness is difficult to prove and "[e]ven truly awful working conditions may not rise to the level of constructive discharge." Hill v. Verizon Maryland, Inc., No. RDB-07-3123, 2009 WL 2060088, at *13 (D. Md. July 13, 2009). Simply put, the court cannot conclude that the amended complaint alleges sufficient deliberateness or intolerableness giving rise to a plausible claim for relief for constructive discharge. While the alleged reduction in salary is a sufficiently adverse employment action to sustain Cash's claim for discrimination, the court does not believe that there are adequate factual assertions supporting the contention that Magic City intended to pressure Cash to quit. Accordingly, the court will dismiss Cash's claim for discriminatory discharge.

### III. Failure to Accommodate

Cash also alleges that Magic City discriminated against him because it failed to accommodate his disability. The ADAAA formally adopted what was already the majority view: that "a covered entity... need not provide a reasonable accommodation... to an individual who [is merely regarded as disabled.]" 42 U.S.C. § 12201(h); see Mercer v. Drohan Mgmt. Grp., Inc.,

14

No. 1:10CV1212, 2011 WL 5975234, at *7 (E.D. Va. Nov. 28, 2011) (discussing the ADAAA's adoption of the majority view). As discussed above, Cash has failed to plead an actual disability and therefore, does not have a cause of action for failure to accommodate.

## IV. Retaliation

Finally, Cash claims that Magic City retaliated against him for disclosing his disability and for asking for an accommodation. Under 42 U.S.C. § 12203, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." To establish a prima facie case of retaliation, the plaintiff must show that (1) he has engaged in conduct protected by the ADA; (2) that he suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002). A protected activity may include "voicing one's own opinions in order to bring attention to an employer's discriminatory activities" as well as "complain[ing] to [] superiors about suspected violations." Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543-44 (4th Cir. 2003). In the context of the ADA, a request for accommodations is a protected activity. See Haulbrook, 252 F.3d at 706; Wagoner v. Lewis Gale Med. Ctr., LLC, No. 7:15-CV-00570, 2016 WL 7156796, at *5 (W.D. Va. Dec. 7, 2016) ("The prevailing view, in the Fourth Circuit and elsewhere, is that requesting an accommodation constitutes protected activity under the ADA.").

However, "[c]omplaints are not considered protected activities when they fail to make any allegations about discrimination based on a protected characteristic." McGruder v. Epilepsy Found. of Am., Inc., No. 11-cv-02310, 2012 WL 832800, at *5 (D. Md. Mar 9, 2012). In this case, it appears that Cash revealed diagnoses of a bleeding ulcer and anemia, neither impacting

15

his ability to engage in full-time work in Roanoke. This discussion is not protected under the ADA. See Feliciano v. Reger Grp., No. 1:14-cv-985, 2014 U.S. Dist. LEXIS 183364, at *4 (E.D. Va. Sept. 10, 2014) ("This Court cannot find any binding case law supporting Plaintiff's suggestion that discussing a short term disability with one's supervisors is a protected activity under the ADA."); see also Staten v. State of Md. Dep't of Labor, Licensing, and Regulation, No. RDB-07-3409, 2010 WL 1246036, at *4 (D. Md. Mar. 26, 2010) ("A plaintiff's complaint to her employer . . . must be about unlawful employment practices . . . ."); Grazioli v. Genuine Parts Co., 409 F. Supp. 2d 569, 584 (D.N.J. 2005) (stating that the plaintiff did not engage in protected activity when she merely informed her employer of her disability). Thus, by simply telling Magic City about his condition, Cash did not engage in a protected activity.

However, Cash also asked for a reasonable accommodation, which is a protected activity, when he presented his doctor's note requesting that he work full-time from Roanoke or part-time from Lexington. Wagoner, 2016 WL 7156796, at *5. Unlike a claim for failure to accommodate, Cash need not be actually disabled when claiming that he was retaliated against in requesting an accommodation, provided the he had a good faith belief that he was entitled to request the accommodation. See Williams v. Philadelphia Housing Auth. Police Dep't, 380 F.3d 751, 759 n.2 (3d Cir. 2004) ("[A]n ADA retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is 'disabled' within the meaning of the ADA. . . . [A] plaintiff need only show that she had a reasonable, good faith belief that she was entitled to request the reasonable accommodation . . . ."); Cassimy v. Bd. of Educ., 461 F.3d 932, 938 (7th Cir. 2006) (finding that a plaintiff's good-faith request for accommodations was a protected activity that supported a claim for retaliation).

16

While Magic City was "not required to provide [Cash] with the specific 'accommodation he may request, but only with reasonable accommodation as is necessary to enable him to perform his essential functions,'" as discussed previously, "[a]n adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." E.E.O.C. v. Newport News Shipbuilding & Drydock Co., 949 F. Supp. 403, 408 (E.D. Va. 1996) (quoting Harmer v. Virginia Elec. and Power Co., 831 F. Supp. 1300, 1306 (E.D. Va. 1993)); Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (citing Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). The court has already determined that Cash has sufficiently pled that he was subjected to an adverse employment action when his employer permanently transferred his position to Roanoke and reduced his salary. Accordingly, the court believes Cash has adequately pled the first two elements of a retaliation claim.

Cash must also plead a causal relationship between the protected activity and the adverse employment action. "[P]laintiffs may demonstrate such a causal relationship [by] show[ing] that the adverse act bears sufficient temporal proximity to the protected activity." Westmoreland v. Prince George's Cty., Md., 876 F. Supp. 2d 594, 613 (D. Md. 2012) (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)). Here, Cash was told that his position in Lexington would be filled and that his salary reduction would be permanent within two days of the request for accommodation. The court believes that these events are sufficiently close to state a claim for retaliation. See Clark, 532 U.S. at 273 ("The cases that accept mere temporal proximity between an employer's knowledge of the protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal

17

proximity must be very close."); Williams, 380 F.3d at 760 (noting that "two days between the protected activity engaged in and the alleged retaliation" can suffice). Consequently, the court will deny defendant's motion to dismiss with regard to Count IV of the amended complaint.

V. **Disability Discrimination for Being Regarded As Disabled**

The plaintiff asserts a fifth cause of action for being discriminated against because he was regarded as disabled. The court notes that being regarded as disabled is not a separate cause of action, but a method of demonstrating that one has a disability for purpose of the ADA discrimination claim. 42 U.S.C. § 12102(2); Reynolds v. Am. Nat. Red. Cross, 701 F.3d 143, 150 (4th Cir. 2012) (noting that the plaintiff did not meet the definition of disability as required to sustain a claim for discrimination, in part, because he could not establish that he was regarded as disabled). Because the court addressed whether Cash was regarded as disabled in determining whether Cash had stated a claim for discrimination in Count I, the court will not repeat the analysis here. The court will also dismiss Count V of the amended complaint as duplicative of Count I.

### Conclusion

For the foregoing reasons, Magic City's motion to dismiss will be granted in part and denied in part. Count I and IV of the amended complaint remain. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 20th day of January, 2017.

_____
Chief United States District Judge

18

Case 7:16-cv-00192-GEC   Document 25   Filed 01/20/17   Page 18 of 18   Pageid#: 158